Jacqueline E. Young, Bar No. 280374
JYoung@perkinscoie.com
Thomas R. Johnson, Bar No. 010645
TRJohnson@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
Houlihan Lokey, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **KEVIN MCFALL**, in individual,<br><br>Plaintiff,<br><br>v.<br><br>**STACY AND WITBECK, INC.**, a California corporation; **JOHN BOLLIER**, an individual; and **HOULIHAN LOKEY, INC.**, a California corporation,<br><br>Defendants. | Case No. 3:14-CV-04150 JSC<br><br>**REPLY BRIEF TO PLAINTIFF'S OPPOSITION OF DEFENDANT HOULIHAN LOKEY'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    A.    Plaintiff's claim is time-barred on its face ........................................................ 2

        1.    As alleged, Plaintiff was harmed in March 2013, a fact clear on the face of Plaintiff's complaint ..................................................................... 2

        2.    The discovery rule does not apply to delay the accrual of Plaintiff's claim ................................................................................................................ 4

        3.    The gravamen of Plaintiff's claim is deceit, and as such, it is subject to a three year statute of limitations ............................................................. 6

    B.    Plaintiff has failed to state an aiding and abetting claim against Houlihan ............ 8

        1.    Plaintiff has failed to allege that Houlihan knew it was aiding a breach of duty with respect to the Buy-Sell ................................................. 9

        2.    Ordinary valuation services are not generally "substantial assistance" ................................................................................................... 11

        3.    To the extent Plaintiff has alleged any aiding and abetting by Houlihan, it is with respect to conduct that did not harm the Plaintiff .................................................................................................... 13

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (Ct. App. 2014)..................................................................................2

*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014) ....................................................................................10

*Casey v. U.S. Bank Nat'l Ass'n*,
   127 Cal. App. 4th 1138 (Ct. App. 2005)................................................................8, 9, 10, 11

*City of Vista v. Robert Thomas Sec., Inc.*,
   84 Cal. App. 4th 882 (Ct. App. 2000)..................................................................................3, 7

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)..............................................................................11, 12

*Fuller v. First Franklin Fin. Corp.*,
   216 Cal. App. 4th 955 (Ct. App. 2013)................................................................................2, 7

*Gabelli v. S.E.C.*,
   133 S. Ct. 1216 (2013) .........................................................................................................2, 3

*Green v. ADT, LLC*,
   2016 WL 3208483 (N.D. Cal. June 10, 2016) .......................................................................12

*Greene Trio Music, LLC v. Jackson*,
   2008 WL 2719582 (Ct. App. July 14, 2008)..........................................................................7

*In re Sharp Int'l Corp.*,
   281 B.R. 506 (Bankr. E.D.N.Y. 2002).....................................................................................9

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ........................................................................................................5, 6

*Mendelson v. Capital Underwriters, Inc.*,
   490 F. Supp. 1069 (N.D. Cal. 1979) ................................................................................11, 12

*Miller v. Bechtel Corp.*,
   33 Cal. 3d 868 (1983) .............................................................................................................5

*Pedro v. City of L.A.*,
   229 Cal. App. 4th 87 (2014)...................................................................................................5

*Salahutdin v. Valley of Cal., Inc.*,
   24 Cal. App. 4th 555 (Ct. App. 1994)..................................................................................7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) .................................................................................. 12

*Swanson v. Wilson*,
  423 Fed. App'x 587 (6th Cir. 2011) ............................................................................ 7

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
  1 Cal. 3d 586 (1970) ................................................................................................... 3

**STATUTES**

Cal. Code. Civ. Proc. § 338(d) ............................................................................... 1, 4, 5

**RULES**

Fed. R. Civ. P. 45(d)(1) ................................................................................................ 4

**OTHER AUTHORITIES**

Black's Law Dictionary 23 (9th ed. 2009) .................................................................... 2

Restatement (Second) of Torts § 876(b) ....................................................................... 8

1     Defendant Houlihan Lokey, Inc. ("Houlihan") respectfully submits this Reply Brief in
2  opposition to Plaintiff's Opposition to Defendant Houlihan's Motion to Dismiss (Dkt. 106), filed
3  with the United States District Court, Northern District of California San Francisco Division on
4  September 2, 2016.

**INTRODUCTION**

6     Plaintiff's claim against Houlihan is inscrutable, and his opposition muddies the waters
7  further by adding new allegations and ignoring inconvenient portions of his own complaint. But
8  Plaintiff's complaint is clear in one respect: it is time barred. As the Second Amended
9  Complaint ("SAC") states: "McFall sold his 26,300 private shares in December 2012…
10 Ultimately, on March 8, 2013, Bollier announced a FY 2012 share price of $279.24 per share."
11 (SAC ¶¶ 21, 25.) Plaintiff cannot escape that if, as alleged, the valuation price was set as of
12 March 8, 2013, the clock necessarily began to run no later than that date.

13    The SAC is also clear that the gravamen of Plaintiff's claim against Houlihan is deceit.
14 Plaintiff now effectively concedes this fact, as Plaintiff's opposition doubles down on the theory
15 that Houlihan and Bollier engaged in a combined effort to doctor the 2012 valuation to achieve a
16 specific result, and states that McFall was deceived. (Opp'n at 8.) A fiduciary duty complaint
17 involving deceit (i.e., fraud) is subject to a three-year fraud statute of limitations under the
18 California Code of Civil Procedure. Cal. Code. Civ. P. § 338(d). Given these allegations, and
19 based on the statute of limitations alone, there is no doubt that Plaintiff's claim against Houlihan
20 should be dismissed.

21    Even if the court finds that the added claim against Houlihan is not time-barred, Plaintiff's
22 claim should still be dismissed because he has failed to allege that Houlihan aided and abetted
23 tortious conduct and that this conduct actually caused McFall harm. Plaintiff further fails to
24 respond to any of the authority cited in the Motion to Dismiss and neglects to explain how (a) any
25 of Houlihan's alleged conduct was done with knowledge of Bollier's intention to breach a
26 fiduciary duty to McFall or (b) Houlihan substantially assisted in any breach. The failure to do
27 either provides an independent basis to dismiss his complaint with prejudice.

-1-

**ARGUMENT**

**A.    Plaintiff's claim is time-barred on its face.**

Plaintiff's claim against Houlihan is subject to California's three-year statute of limitations applicable to fiduciary duty claims involving fraudulent conduct. *See Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (2014) ("Thus, the statute of limitations for aiding and abetting a breach of fiduciary duty is the same as the statute of limitations for breach of fiduciary duty….The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent.") (*citing Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955 (2013)).  As the gravamen of plaintiff's claim is deceit (i.e., fraudulent conduct), and because it arose more than three years ago, on March 8, 2013, it is time-barred as Plaintiff did not file a claim against Houlihan until June 1, 2016.  Plaintiff's response raises three arguments as to why his claim is not time-barred. Each is without merit.

**1.    As alleged, Plaintiff was harmed in March 2013, a fact clear on the face of Plaintiff's complaint.**

Plaintiff argues that the date his cause of action accrued is not clear from the face of the complaint, so his claim cannot be dismissed as time-barred.[1]  (Opposition 12-13.)  In particular, Plaintiff argues his claim did not accrue until "at the earliest, *after* the Company failed to pay McFall according to a proper valuation for his shares pursuant to the Buy-Sell Agreement."  (*Id.* at 13.)  Plaintiff is arguing that the date on which Stacy & Witbeck, Inc. (the "Company") actually paid him the allegedly insufficient amount is the date on which his cause of action accrued.

As a general legal principle, a cause of action accrues "when the plaintiff has a complete and present cause of action."[2]  *Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1220 (2013) (citing cases); *see also* Black's Law Dictionary 23 (9th ed. 2009) (defining accrue as "[t]o come into existence as an enforceable claim or right").  Here, Plaintiff's complaint states that McFall had sold his shares in

---

[1] Plaintiff concedes that his claim does not relate back to the filing of his original complaint.  (Opp'n at 10.)

[2] This does not consider the impact of the so-called discovery rule.  This rule does not apply here, as explained below.

-2-

1  December of 2012.  (SAC ¶ 21.)  The price for those shares was finally determined and
2  announced by the Company on March 8, 2013.  (*Id.* ¶ 25.)  Accordingly, the damages for
3  Plaintiff's claim against Houlihan were fixed as of that date.

4  Plaintiff has cited no case law supporting his theory that his claim only accrued when he
5  had "cash in hand."  Rather, all that is necessary for a claim to accrue is that a plaintiff has an
6  "enforceable claim or right."  *Gabelli*, 133 S. Ct. at 1220.  Under Plaintiff's theory, the Company
7  could have cut him a check, but his failure to cash or deposit it would have delayed the accrual of
8  his cause of action.  Taken to the extreme, under Plaintiff's theory, if the Company failed to pay
9  him anything, the accrual of his cause of action would be delayed indefinitely.  This is
10 unsupported by the law.

11 Plaintiff is correct that for some claims, damages are necessary for a cause of action to be
12 complete, and "[m]ere threat of future harm, not yet realized, is not enough."  *City of Vista v.*
13 *Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (2000) (citation omitted).  "When the
14 wrongful act does not result in immediate damage, the cause of action does not accrue prior to the
15 maturation of perceptible harm."  *Id.* quoting *United States Liab. Ins. Co. v. Haidinger-Hayes,*
16 *Inc.*, 1 Cal. 3d 586, 597 (1970).  But by March 8, 2013, at the latest, Plaintiff had suffered
17 "perceptible harm" well beyond a "mere threat."  In fact, at that date, his alleged damages were
18 fully determinable. Compare this with *City of Vista*.  There, a number of broker-dealers were
19 alleged to have charged an excessive markup on two securities.  Testimony stated that it was
20 "generally impossible to know" whether the markup was excessive until the last interest payment
21 was received, and as a result, the court found that there was an issue of fact as to when the
22 Plaintiff suffered any damages which would have caused the accrual of a cause of action.  *City of*
23 *Vista*, 84 Cal. App. 4th at 887.  Here, by contrast, Plaintiff contends that his damages should be
24 determined with reference to the price adopted on March 8, 2013.  (SAC ¶ 27) (stating that "[t]he
25 true value of McFall's shares was much higher than $279.24 per share").  Plaintiff's SAC has no
26 uncertainty about when or how he was damaged; under his own theory, his damages were
27 complete on March 8, 2013.
28

-3-

Plaintiff tries to inject uncertainty regarding when his claim accrued by quoting (out of context) the Buy-Sell Agreement in a footnote of his opposition. (Opp'n at 9 n.21). But when placed in its proper context, the Buy-Sell Agreement serves to confirm that Plaintiff's claim accrued more than three years before he filed his SAC. As the Buy-Sell Agreement states:

> [P]rovided that if the Offer Date is after November 30 but before the appraisal for that year has been completed, the appraisal from the prior November 30 shall be utilized to temporarily determine the Agreed Purchase Price, and the Closing shall occur based on 80 percent of such prior appraisal. Within 30 days after completion of the current appraisal, the Company shall re-calculate the Agreed Purchase Price, and the parties shall make necessary adjustments as to that portion of the Agreed Purchase Price paid in cash and that portion paid by note.

(SAC, Ex. A ¶ 2.2(a).) In other words, Plaintiff's December sale, which took place "after November 30 but before the appraisal for that year," would have been initially paid at 80% of the previous year's appraisal. The "necessary adjustments," referred to in the Plaintiff's footnote, would have merely involved adjusting the price paid to take into account the FY2012 share price Bollier announced on March 8, 2013—a mechanical process. Furthermore, the Buy-Sell Agreement clearly states that Plaintiff was to be paid the totality of the price due to him within 30 days of the completion of the "current appraisal"—which, Plaintiff alleges, was reflected by the final purchase price announced on March 8, 2013. As a result, regardless of when the Company paid the remainder of the purchase price, Plaintiff's claim certainly accrued more than three years before Plaintiff brought his claim against Houlihan.

**2.    The discovery rule does not apply to delay the accrual of Plaintiff's claim.**

Plaintiff alleges that the "discovery rule" applicable to fraud claims, see Cal. Code. Civ. P. § 338(d), precludes dismissal of his claim against Houlihan because "McFall had no ability to detect the affirmative assistance Houlihan Lokey provided to Bollier…until *after* the Court ordered production of the Houlihan Lokey internal e-mails."[3] (Opp'n at 10.)

---

[3] The characterization of Houlihan's response to the third-party subpoena contained in Plaintiff's opposition misrepresents the facts. Plaintiff's subpoena to Houlihan was facially overbroad in violation of Fed. R. Civ. P. 45(d)(1); among other things, the subpoena sought "all documents and correspondence related in any way" to the valuations from 2006 to the present. Rather than litigate, Houlihan and Plaintiff engaged in a dialogue and an iterative process of producing documents, resulting in several productions. After agreeing to accept these more

-4-

As discussed in Houlihan's Motion to Dismiss and below, the SAC makes clear that Plaintiff's knowledge of Houlihan's alleged involvement was more than sufficient. But, even if the Court were to accept the notion that Plaintiff had no ability to detect Houlihan's involvement, Plaintiff's ignorance would not toll the statute of limitations as a matter of law. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) (stating that it is a "well established rule that ignorance of the legal significance of known facts or the identity of the defendant would not delay the running of the statute—only ignorance of one or more 'critical facts' could have that effect") (citation omitted). This is carefully explained in one of the cases actually relied upon by Plaintiff, *Pedro v. City of L.A.*, 229 Cal. App. 4th 87 (2014), which states: "The general rule is that the plaintiff's ignorance of the identity of a wrongdoer does not delay the accrual of a cause of action…. This is because the identity of the wrongdoer is not an element of the cause of action." *Id.* at 102-103 (internal citations and quotation marks omitted) (cited in Opp'n at 9 n.20). The discovery rule only delays the accrual until "the plaintiff discovers, or has reason to discover, the *cause of action.*" *Id.* (emphasis added) (internal citations omitted); *see also* Cal. Code. Civ. P. § 338(d) ("[T]he cause of action in [the case of fraud or mistake] is not deemed to have accrued until the discovery…of *the facts constituting the fraud or mistake*.") (emphasis added).

So, even if it were applicable, the discovery rule would delay triggering the statute of limitations only until Plaintiff discovered or should have discovered the facts of the action itself, regardless of when he discovered or should have discovered Houlihan's alleged involvement. Here, there is no doubt—and Plaintiff does not seriously dispute—that Plaintiff discovered the "cause of action" by, at the latest, March 8, 2013.[4] This is the date Bollier announced the

---

limited productions, including e-mails between Houlihan and the Company, Plaintiff waited almost a full year before attempting to compel Houlihan to produce its internal e-mails. Houlihan promptly produced the requested documents. There is no evidence whatsoever of Houlihan "circl[ing] the wagons" or "taking excessively conservative discovery positions." (Opp'n at 7.) Further, the Court never had to order the production of anything from Houlihan.

[4] Plaintiff suggests in a footnote that he was not on notice of any undervaluing of his shares until the FY 2013 valuation was announced. (Opposition 4 n.9). The *Jolly* court explained that the existence of "early suspicion" creates a duty for the plaintiff to investigate and starts the running of the statute. *Jolly*, 44 Cal. 3d at 1111 (*citing Miller v. Bechtel Corp.*, 33 Cal. 3d 868 (1983)). Here, Plaintiff had suspicion at the very least, judging by his decision to retire because of Bollier's alleged manipulation and the threat of a "Board revolt" over the initial valuation. (SAC ¶¶ 21, 23).

-5-

allegedly inadequate stock price. And, as noted in Houlihan's Motion to Dismiss, the SAC makes clear that Plaintiff was on notice of Bollier's alleged manipulation of the share price as early as March 2012, and that Bollier's purported misconduct was the very reason for Plaintiff's retirement from the Company. (SAC ¶ 21.)

Plaintiff argues that the discovery rule delayed the accrual of his cause of action until Plaintiff held a "smoking gun" establishing liability against all defendants. This is not the rule. Rather, Plaintiff need only have a "suspicion of wrongdoing, and therefore an incentive to sue" in order to begin running the statute of limitations. *Jolly*, 44 Cal 3d at 1111 ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."). That suspicion does not have to attach to any person in particular. *Id.* at 1110-1111 ("[T]he statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."). Plaintiff, under his theory of the case, can hardly deny that—assuming his allegations are to be believed—he knew sufficient facts to trigger a "suspicion" of wrongdoing on the part of Houlihan. Plaintiff knew that the ESOP valuations about which he complains were *prepared* by Houlihan more than three years before he filed his claim. (SAC ¶ 15). Further, as a member of the Board, Plaintiff participated in the Board meetings where these valuations were discussed and, given his belief that the value of his shares was at stake, he had a strong incentive to be keenly engaged. (*Id.* ¶ 24). He surely had suspicion; and "as long as suspicion exists, it is clear that the plaintiff must go find the facts, she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111. Plaintiff did not do this for over three years, and must live with the consequences.

### 3. The gravamen of Plaintiff's claim is deceit, and as such, is subject to a three year statute of limitations.

Plaintiff's final argument is that his claim against Houlihan is subject to the four-year statute of limitations applicable to general fiduciary duty claims, rather than the three-year statute applicable to fiduciary duty claims involving deceit. Plaintiff states that "the gravamen of the claim against Bollier and Houlihan Lokey is clearly grounded in the improper *manipulation* of the share price, and *not* based on a series of alleged *misrepresentations*." (Opp'n at 9.)

-6-

1    The proper question is not whether the claim involves a "series of alleged misrepresentations," or whether it is styled as fraud, or whether a plaintiff uses some "magic words" of fraud and deception.  Rather, the proper question, as the cases make clear, is whether the gravamen of the fiduciary duty claim is deceit.  *See Fuller*, 216 Cal. App. 4th at 963.  As the cases cited in the Motion to Dismiss explain, none of which Plaintiff left addressed, "price manipulation" by a fiduciary will be subject to the three-year statute.  None of the cases cited in the Motion to Dismiss involve actual fraud claims or highlight a "series of misrepresentations"; instead, the courts in those cases looked holistically at the plaintiff's claim for an element of deception.  Constructive fraud, which is defined as "any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent," *Salahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555, 562 (1994) (emphasis removed), also suffices to trigger the application of the three year statute of limitations.  *See City of Vista*, 84 Cal. App. 4th at 889.

For example, in *City of Vista*, discussed above and cited by the Plaintiff, the court concluded that a three-year statute of limitations applied to a fiduciary duty claim involving alleged manipulation and collusion on the price of a security sold by a group of broker-dealers. *Id.* at 885, 889.  The court concluded that the "gravamen of Vista's complaint is that [defendant's] acts constituted actual or constructive fraud."  *Id.*  In another case, *Swanson v. Wilson*, 423 Fed. App'x 587 (6th Cir. 2011), the Sixth Circuit, applying California law, held the three-year statute of limitations applied to a case where a fiduciary was alleged to have concealed and absconded with insurance money; the court did not cite any specific misrepresentations or a course of fraud in the traditional sense.  As the Sixth Circuit concluded, "California courts have consistently applied the three-year period to cases like this one that involve both fraud and fiduciary issues." *Id.* at 598 (citing cases).  In a third case, *Greene Trio Music, LLC v. Jackson*, 2008 WL 2719582 at *8 (Ct. App. July 14, 2008), a court found the gravamen of the plaintiff's complaint was constructive fraud where the defendant, a founding member of a record company, had allegedly breached his fiduciary duty to his company by "secretly…conspir[ing]…to transfer [the plaintiff's] publishing rights."  Each of these cases involves a breach of fiduciary duty claim, *not*

-7-

1  a fraud claim, none of them highlights a series of specific misrepresentations, and each applies the
2  three year statute of limitations.

3  Moreover, Plaintiff is just plain wrong when he says that his case does not involve
4  "misrepresentations." In fact, Bollier's alleged course of conduct was exactly about deceiving the
5  Board while enabling the Company to buy back shares at a lower price. (SAC ¶ 22.) According
6  to the Complaint, "mid-year 2012" Bollier is alleged to have "engaged Houlihan Lokey" to
7  "manipulate" the stock price of the Company, keeping share prices down just enough to avoid
8  "wreak[ing] havoc inside the Board of Directors." (*Id.* ¶¶ 22 - 23.) Bollier did this because he
9  was "fearful over the company's obligation to buy back shares in the future." (*Id.* ¶ 22.)
10 Houlihan and Bollier allegedly picked a predetermined share price then deceived the Board by
11 using "valuation gymnastics" to arrive at that number. (*Id.* ¶ 24.)

12 At the very least, this is constructive fraud: Bollier's alleged conduct certainly is an
13 "omission or concealment involving a breach of legal or equitable duty, trust or confidence"
14 which gained an advantage for the Company. *Salahutdin*, 24 Cal. App. 4th at 562. But it's also
15 classic textbook fraud as well, as Plaintiff's Opposition makes clear. Plaintiff's whole story is
16 that Bollier hired Houlihan to sell a false price to the Board with respect to the FY 2012
17 valuation; one just low enough so as to enable the company to buy back shares cheaply, but "just
18 high enough to prevent a Board or shareholder revolt." (Opp'n at 4.) Plaintiff even states he was
19 supposedly deceived by Houlihan Lokey's status as "an independent appraisal firm relying on the
20 superior knowledge of management," effectively conceding in his Opposition that his claim
21 involves both misrepresentation and reliance. (*Id*.) There can be little doubt that Plaintiff's
22 fiduciary duty claim has deceit as its gravamen and is subject to the statute of limitations for such
23 claims.

24 **B.     Plaintiff has failed to state an aiding and abetting claim against Houlihan.**
25 To state a claim for aiding and abetting under California law, Plaintiff must allege facts
26 showing that Houlihan (1) knew that Bollier's conduct constituted a breach of fiduciary duty and
27 (2) provided substantial assistance or encouragement to Bollier in effecting that breach. *Casey v.*
28

-8-

*U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144-46 (2005) (*citing* Restatement (Second) of Torts § 876(b) (Am. Law Inst. 1979).

### 1. Plaintiff has failed to allege that Houlihan knew it was aiding a breach of duty with respect to the Buy-Sell.

Plaintiff's complaint bounces back and forth between at least three types of alleged misconduct by Bollier without specifying which actually serves as the conduct underlying the breach of fiduciary duty claim: (1) manipulating the ESOP valuation process by feeding Houlihan unreasonably conservative financial projections and assumptions; (2) further manipulating the resulting valuation upwards to allay the Board's concerns; or (3) independently causing the Company to adopt the ESOP Committee's valuations for purposes of the Buy-Sell Agreement, in some cases without the Board's approval. (SAC ¶¶ 22-25). Houlihan is alleged to have aided and abetted (1) by accepting the "unreasonably conservative" assumptions; (*Id.* ¶ 20.) and (2) by actively engaging in "valuation gymnastics" to arrive at a "predetermined valuation number." (SAC ¶ 24.) The primary weakness in these allegations is that they fail to allege that Houlihan knew of Bollier's intent to produce a fraudulent buy-back price for private shares under the Buy-Sell Agreement. This is an Agreement which Houlihan had no direct involvement in; Plaintiff does not even allege that Houlihan had knowledge of its existence. To sustain a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege that a defendant had actual knowledge of the "specific wrongful act that constituted the [primary actor's] breach of fiduciary duty." *Casey*, 127 Cal. App. 4th at 1147 (emphasis added). General knowledge or suspicion of wrongdoing is insufficient. *In re Sharp Int'l Corp.*, 281 B.R. 506, 513 (Bankr. E.D.N.Y. 2002).

Plaintiff's response to these arguments is to ignore the case law entirely and make a swath of fresh allegations against Houlihan. Plaintiff now states, without support, that "Houlihan Lokey was aware, over a period of years, that Bollier was seeking to manipulate the share price." (Opp'n at 12.) This allegation is simply not in the SAC. Similarly, Plaintiff also claims for the first time in his opposition that Houlihan "actively participated in the Board meetings regarding the Buy-Sell valuations year over year"—again, an allegation that appears nowhere in the SAC. (Opp'n at 2.) Plaintiff attempts to support these new allegations by pointing to his claim that

-9-

1  Houlihan "knew that the valuation was being used for the separate and distinct purpose of valuing
2  the company private shares." (SAC ¶ 15.)  But, even if true, this falls far short of suggesting that
3  Houlihan participated in Board meetings or knew that Bollier was attempting to manipulate the
4  share price.  And, as noted in the Motion to Dismiss, these allegations hardly suggest that
5  Houlihan knew about the Buy-Sell Agreement or that its valuation for the ESOP was being used
6  for purposes of setting the "Agreed Purchase Price" under the Buy-Sell Agreement.

7  The only case cited by the Plaintiff relating to this question, *AngioScore, Inc. v. TriReme*
8  *Med., LLC*, 70 F. Supp. 3d 951 (N.D. Cal. 2014), is not relevant.  *AngioScore* merely establishes
9  that knowledge of a breach of the duty of loyalty may be inferred from an intentional transaction
10 with someone known to have a conflict of interest.  In *AngioScore*, the plaintiff alleged aiding and
11 abetting by a corporation which aided a Board member in breaching his duty of loyalty by
12 helping him commercialize a product without first offering it to his company as a business
13 opportunity.  Although AngioScore had not specifically alleged knowledge of the breach,
14 critically, AngioScore had alleged that the defendant corporations knew about the underlying
15 conflict of interest.  *Id.* at 958.  The Court found this was sufficient to allege knowledge of the
16 breach of the duty of loyalty.  *Id.*  This makes sense; a breach of the duty of loyalty follows
17 automatically from engaging in a transaction with someone known to have a conflict of interest.
18 But nothing in this case supports the idea that knowledge of a scheme to defraud can be gleaned
19 from allegations of suspicious activity plus allegations of knowledge of a duty.  Some link
20 between the actual violation and the knowledge alleged must exist for an inference to be
21 permissible; otherwise, there is nothing more than a "mere suspicion."  *Id.*

22 The general allegation, set forth in the SAC, that Houlihan knew the ESOP valuation
23 might be used for valuing private shares for some unstated purpose is not sufficient.  Plaintiff fails
24 to allege that Houlihan knew that the Company was using the ESOP valuation to set the buy-back
25 price for private shares under the Buy-Sell Agreement, and further fails to allege that Bollier was
26 engaged in conduct designed to reduce the share price in the ESOP process *for the purpose* of
27 pushing down the price of shares purchased by the Company under the Buy-Sell Agreement.  It is
28 this link which is essential, and which Plaintiff cannot allege.  In *Casey*, the court dismissed the

-10-

claim for precisely this reason. There, the court held that while the allegations showed the defendants might have *suspected* the fiduciaries were diverting funds, the plaintiff needed to plead actual knowledge of the "specific primary wrong." 127 Cal. App. 4th at 1145 ("The fact that a company is inflating its receivables does not necessarily mean that the company's principals are looting it. . . . [S]uspicion and surmise do not constitute actual knowledge."). *Id.* at 1147 (citation omitted). Plaintiff has failed to allege Houlihan's knowledge of Bollier's purpose in deflating the value of the stock, and this is fatal to his claim.[5]

### 2. Ordinary valuation services are not generally "substantial assistance."

Plaintiff fails to meaningfully respond to any of Houlihan's arguments or case law set forth in the Motion to Dismiss addressing substantial assistance. In particular, as discussed in the Motion to Dismiss, provision of general professional services, generally, does not amount to substantial assistance. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (finding that a broker does not participate in a fraud by merely performing normal services). The Motion to Dismiss also cites to *Mendelson v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1083 (N.D. Cal. 1979), involving an aiding and abetting claim against accountants. The court there found that the accountant did not render substantial assistance, as the primary actor could simply have "hired a less astute accountant or bookkeeper." *Id.* at 1084.

The parallels between *Mendelson* and this case are clear. Here, Houlihan made less than $40,000 in fees for its preparation of the valuations for the ESOP. (See Ex. A to Request for Judicial Notice, Dkt. # 95-1 (hereinafter, "EL"), at 1-2). Houlihan's services were purely advisory, and its conclusions were just "one of a number of factors and analyses which the [ESOP] Committee" was to utilize in calculating the ESOP valuation. *Id.* Houlihan was also entitled to rely, without any verification, on the "accuracy and completeness" of "all information furnished by or on behalf of the Company." *Id.* Houlihan's conduct was no different than an

---

[5] Plaintiff did allege that Houlihan knew of Bollier's purpose in inflating the valuation to deceive the Board, but, this is not the same as alleging Plaintiff knew Bollier was trying to keep the share price down. Further, as explained below, this conduct did not cause Plaintiff's harm.

-11-

accountant simply "setting up books to faithfully record [a primary actor's] dubious transactions" and did not amount to substantial assistance. *Mendelsohn*, 490 F. Supp. at 1084.

In response, Plaintiff first argues that the Court should ignore these facts about Houlihan's relationship with the Company's ESOP because the Engagement Letters were not specifically identified in the SAC. This is a misstatement of the law. The Court can consider the Engagement Letters attached to Houlihan's Request for Judicial Notice so long as the complaint "relies on them," even where those documents are not attached to the complaint. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). In *Green v. ADT, LLC*, 2016 WL 3208483, at *4 (N.D. Cal. June 10, 2016), the Court confronted a similar situation and confirmed that it could consider an agreement not attached to the complaint, where the "[Plaintiff's] negligence claim rests on ADT's provision of security services and products, obligations arising from the contract." *Id.* As in *Green*, the SAC here necessarily relies upon Houlihan's agreement to perform services for the ESOP Committee because without that agreement, Houlihan "would have had no reason to provide the . . . services in the first place."[6] *Id.*

But even if the Court were to elect not to consider the Engagement Letters, Plaintiff has still failed to allege substantial assistance. Plaintiff's allegations confirm the terms of the Engagement Letter, albeit with a lot of window dressing. (SAC ¶ 15.) In Plaintiff's telling, Houlihan's purported "substantial assistance" was comprised of (1) accepting Bollier's "unreasonably conservative" projections and assumptions, which resulted in a low share price, and (2) cooperating with Bollier's instructions to modify certain inputs and assumptions to allay the Board's concerns. The conduct alleged at (1) is no different than the conduct rejected as not 'substantial' in *Mendelson* or *Cromer*. And as explained below, the conduct alleged at (2) did not harm Plaintiff.

---

[6] To the extent Plaintiff is arguing that Houlihan was providing services "outside of any services it may have provided to the ESOP or the trustees," this allegation is not supported by the SAC. (Opp'n at 7.) (emphasis omitted) Rather, the SAC acknowledges that Houlihan's appraisal was "explicitly limited to use for [the] purpose of valuing SWI Employee Stock Option ('ESOP') shares." (SAC ¶ 15.) Plaintiff's allegation is that Houlihan, in the course of providing services under the Engagement Letters, assisted Bollier in breaching a fiduciary duty. This allegation necessarily turns on the services Houlihan was engaged to provide, the terms for which are set out in the Engagement Letters.

-12-

### 3. To the extent Plaintiff has alleged any aiding and abetting by Houlihan, it is with respect to conduct that did not harm the Plaintiff.

Plaintiff ridicules Houlihan's causation argument without seriously addressing it. As pointed out above, Houlihan's acceptance of allegedly "unreasonably conservative" projections cannot, as a matter of law, amount to substantial assistance. Thus, Plaintiff's only argument that Houlihan aided and abetted Bollier must focus on Houlihan's assistance in "moving the valuation up to a specific number range" and "employ[ing] a number of valuation gymnastics." (*Id.* ¶ 24.)

The point of Houlihan's Motion to Dismiss is not to argue simply that the alleged harm experienced by Plaintiff could have been "much worse" had Houlihan not adjusted its valuation of ESOP shares higher. Instead, Houlihan is pointing out that the only knowing conduct which could have amounted to "substantial assistance" actually raised the ESOP share price (and, indirectly, the price of privately held shares) rather than lowered it. As an initial matter, the use of Bollier's conservative assumptions in the valuation calculation for the ESOP shares was not knowing substantial assistance, regardless of Bollier's purpose in submitting those assumptions. So the only potential grounds for pleading knowing substantial assistance relate to Houlihan's alleged collaboration in moving the ESOP share valuation upwards to a "specific number range." But even if Plaintiff had adequately alleged that Houlihan had sufficient knowledge of Bollier's fraudulent plan, Houlihan's alleged conduct had the effect of increasing the amount Plaintiff ultimately received for his shares. According to Plaintiff, Houlihan's alleged efforts caused the FY2012 share price to rise from $226 to $246 and then, after the Board again "protested", to further rise to $279.24 per share —all in all, a 24% increase from the initial result. (SAC ¶ 24-25.) Plaintiff cannot hold Houlihan accountable for taking part in an activity that ultimately benefitted Plaintiff, rather than harmed him.[7] Plaintiff's claim against Houlihan should be dismissed with prejudice.

---

[7] Moreover, the fact that Plaintiff admits that Houlihan assisted in raising rather than deflating the ESOP share valuation contradicts Plaintiff's claim that Houlihan "knew" of Bollier's desire to deflate the share price in the first place.

-13-

DEFENDANT HOULIHAN LOKEY'S REPLY BRIEF
3:14-cv-04150 JSC

# CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss should be granted.

DATED: September 16, 2016

**PERKINS COIE LLP**

By: */s/ Thomas R. Johnson*
    Jacqueline E. Young, Bar No. 280374
    JYoung@perkinscoie.com
    Thomas R. Johnson, Bar No. 010645
    TRJohnson@perkinscoie.com

Attorneys for Defendant
Houlihan Lokey, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **REPLY BRIEF TO PLAINTIFF'S OPPOSITION OF DEFENDANT HOULIHAN LOKEY'S MOTION TO DISMISS** on:

| | |
|---|---|
| Karl D. Belgum, CSB No. 122752 | Keith A. Pitt, CSB No. 254901 |
| Stacy Morgan Boven, CSB No. 298734 | Phil Nelson [*pro hac vice*], OSB No. 013650 |
| NIXON PEABODY, LLP | SLINDE NELSON STANFORD |
| One Embarcadero Center, 18th Floor | 111 SW Fifth Avenue, Suite 1740 |
| San Francisco, CA 94111-3600 | Portland, OR 97204 |
| kbelgum@nixonpeabody.com | keith@slindenelson.com |
| Telephone: 415.984.8409 | phil@slindenelson.com |
| Fax: 866.222.1493 | Telephone: 503-417-7777 |
|  | Fax: 503-417-4250 |
| Attorneys for Defendants |  |
| Stacy and Witbeck, Inc. and John Bollier | Attorneys for Plaintiff |

by the following indicated method(s):

☐ by **faxing** full, true, and correct copies thereof to said attorney(s) to the fax number noted above, which is the last known fax number for said attorney(s), on the date set forth below.

☐ by **emailing** full, true, and correct copies thereof to said attorney(s) to the email address noted above, which is the last known email address for said attorney(s), on the date set forth below.

[X] by **notice of electronic filing** using the CM/ECF system Civil LR 5-5.

☐ by causing full, true, and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last known office addresses listed above on the date set forth below.

DATED: September 16, 2016         **PERKINS COIE LLP**

By: */s/ Thomas R. Johnson*
      Jacqueline E. Young, Bar No. 280374
      JYoung@perkinscoie.com
      Thomas R. Johnson, Bar No. 010645
      TRJohnson@perkinscoie.com

Attorneys for Defendant
Houlihan Lokey, Inc.

-1-

CERTIFICATE OF SERVICE
3:14-cv-04150 JSC