1

2

3

4

5

6

7

8

9

10

United States District Court
Northern District of California

11

12

13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

14

KEVIN MCFALL,

Case No. 14-cv-04150-JSC

Plaintiff,

15

16

v.

**ORDER RE: HOULIHAN LOKEY'S MOTION TO DISMISS**

17

STACY AND WITBECK, INC., et al.,

Re: Dkt. No. 94

Defendants.

18

19

20        Plaintiff Kevin McFall alleges that Stacy and Witbeck, Inc., and John Bollier, the CEO of

21   Stacy and Witbeck, breached their respective duties to him regarding the valuation of the company's

22   stock, and that their efforts to do so were aided and abetted by Houlihan Lokey, Stacy and Witbeck's

23   independent valuation firm.   Newly added Defendant Houlihan Lokey's motion to dismiss the aiding

24   and abetting claim is now pending before the Court.  (Dkt. No. 94.)  Having considered the parties'

25   briefs and having had the benefit of oral argument on October 6, 2016, the Court GRANTS the motion

26   to dismiss.  As the Second Amended Complaint expressly alleges that Plaintiff believed the stock price

27   was being manipulated as early as March 2012, and as the breach of fiduciary duty claim accrued in

28   March 2103, Plaintiff's aiding and abetting a breach of fiduciary duty claim filed against Houlihan

1    Lokey in April 2016 is barred by the statute of limitations.  However, Plaintiff will be granted leave to

2    amend to allege, if possible, that the doctrine of fraudulent concealment applies and to adequately

3    plead a claim for aiding and abetting.

4                                              **BACKGROUND**

5         **A. Factual Allegations of the Second Amended Complaint**

6         Plaintiff was a long-time senior level employee and member of the board of directors of Stacy

7    and Witbeck. (Second Amended Complaint ("SAC"), Dkt. No. 84 at ¶¶ 7-8.)  In March 2012, Plaintiff

8    announced his intent to retire in June 2013 because of concerns he had regarding "stock price

9    manipulations."  (*Id*. at ¶ 21.)  In particular, Plaintiff had concerns regarding CEO John Bollier's

10   efforts to devalue the company stock commencing in the Spring of 2010. (*Id*. at ¶ 17.)  Bollier was

11   assisted in his efforts by Houlihan Lokey ("Houlihan"), the financial valuation firm which Stacy and

12   Witbeck had contracted with for many years to provide an appraisal of the value the Employee Stock

13   Options ("ESOP") shares.  (*Id*. at ¶ 15.)   In addition to ESOP shares, certain key employees such as

14   Plaintiff also privately held stock pursuant to a Buy-Sell Agreement executed in 2006.[1]  (*Id*. at ¶ 13.)

15   Although Houlihan's appraisal "was explicitly limited to" valuation of the ESOP shares, Houlihan

16   "knew that the valuation was being used for the separate and distinct purpose of valuing the company

17   private shares."  (*Id*. at ¶ 15.)

18        When Bollier became CEO in 2010 he "instructed" Houlihan to "value the company without

19   taking into account excess cash on hand, a major variation from generally accepted accounting and

20   valuation principles which has the effect of depressing stock value."  (*Id*. at ¶ 17.)  Bollier continued

21   his efforts to "drive down the company stock price" through 2012 "refusing to count Stacy and

22   Witbeck's excess cash—now at record levels –as part of the company's valuation."  (*Id*. at ¶ 19.)

23   After members of the Board protested, Bollier allowed Houlihan to include some of the excess cash,

24   "driv[ing] up the valuation slightly."  (*Id*. at ¶ 20.)  Nonetheless, "Houlihan "knew that the Stacy and

25   Witbeck projections and excess cash calculations were unreasonably conservative and not in keeping

26   with generally accepted accounting and business appraisal principles."  (*Id*.)

27

28   [1] The Buy-Sell Agreement was discussed at length in the Court's Order on a prior motion to
     dismiss.  (Dkt. No. 23.)

United States District Court
Northern District of California

1      For the fiscal year 2012 ("FY 2012") evaluation, Bollier and Houlihan "commenced a process

2  of manipulating numbers and assumptions inside the valuation itself to raise up the stock price without

3  disturbing the fundamental pessimism of the Bollier projections that Bollier had already sold to senior

4  company management." (*Id*. at ¶ 23.)  Based on Bollier's "overly pessimistic set of future projections"

5  and refusal "to count excess cash towards the evaluation" Houlihan initially valued the stock at $226

6  per share—a decline of nearly 20%. (*Id*. at ¶ 23.)  Because Bollier and Houlihan "knew that th[is]

7  dramatic stock price reduction would wreak havoc inside the Board of Directors and with the company

8  stockholders, they "engaged in a number of accounting machinations to drive the stock price up to

9  $246." (*Id*. at ¶¶ 23-24.)  "[W]orking in concert, [they] employed a number of valuation gymnastics to

10  arrive at the predetermined valuation number," although Houlihan "knew that the underlying

11  projections were overly conservative" and "out of step with" valuation principles. (*Id*. at ¶ 24.)  In

12  March of 2013, Bollier announced a FY 2012 share price of $279.24; "Houlihan Lokey had hit their

13  target." (*Id*. at ¶ 25.)

14      As a result of this share price manipulation, when Plaintiff sold his shares in March 2013 they

15  were significantly undervalued despite 2012 being a record year for profits at Stacy and Witbeck. (*Id*.

16  at ¶¶ 22-25.)  Indeed, while the FY 2012 stock price was valued only 1% above the prior year, the

17  fiscal year 2013 (the year Bollier liquidated holdings) the stock price was set at rate that was 22%

18  higher than the prior year. (*Id*. at ¶¶ 25-26.)  Plaintiff alleges that he suffered $3 million in damages as

19  a result of the stock price manipulation.

20      **B. Procedural Background**

21      Plaintiff filed this action alleging two claims for relief for breach of contract, breach of good

22  faith and fair dealing, and breach of fiduciary duty against Defendant Stacy & Witbeck and John

23  Bollier.[2] (Dkt. No. 1.)  The Court granted in part and denied in part Defendants' motion to dismiss.

24  (Dkt. No. 23.)  Plaintiff thereafter filed a First Amended Complaint which Defendants answered.

25  (Dkt. Nos. 31 & 32.)  The parties delayed much of their discovery to pursue mediation in September

26

27

28  [2] The first claim for relief has three "counts": one for breach of contract, and two for breach of the duty of good faith and fair dealing as to each defendant separately.

United States District Court
Northern District of California

1    2015; however, mediation was ultimately unsuccessful.  (Dkt. No. 41 at 2:14-16.[3])  Following this, the

2    parties engaged in discovery as a result of which Plaintiff sought to add Houlihan as a Defendant.

3    Under the liberal amendment standards of Federal Rule of Civil Procedure 15, Plaintiff was granted

4    leave to do so and thereafter filed the now operative Second Amended Complaint.  (Dkt. Nos. 83 &

5    84.)  The Second Amended Complaint includes the prior claims against Stacy and Witbeck and Bollier

6    and includes a new claim that Houlihan aided and abetted in Bollier's breach of fiduciary duty.

7    Houlihan thereafter filed the now pending motion to dismiss the SAC.[4]  (Dkt. No. 94.)

## DISCUSSION

9    Houlihan's motion to dismiss the SAC is two-fold.  First, Houlihan argues that Plaintiff's

10   aiding and abetting claim is barred by the statute of limitations.  Second, Houlihan contends that even

11   if not so barred, Plaintiff's allegations fail to state a claim for aiding and abetting a breach of fiduciary

12   duty.  The Court addresses each in turn.

### A.  The Statute of Limitations

14   Although the statute of limitations is an affirmative defense, if the face of the complaint

15   demonstrates that the claim was filed after its expiration the defendant may raise the defense in a

16   motion to dismiss.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

### 1) A Three-Year Statute of Limitations Applies

18   "The statute of limitations for breach of fiduciary duty is three years or four years, depending

19   on whether the breach is fraudulent or nonfraudulent."  *Am. Master Lease LLC v. Idanta Partners,*

20   *Ltd*., 225 Cal. App. 4th 1451, 1479 (2014), as modified (May 27, 2014).  Houlihan contends that the

21   three-year limitations period applies because its conduct alleged here sounds in fraud:  Plaintiff alleges

22   that Houlihan's valuations were false and misrepresented the company's actual value.  Plaintiff

23   counters that this is nothing more than an attempt to recast Plaintiff's allegations which nowhere use

24   the term fraud.  However, "[t]he statute of limitations that applies to an action is governed by the

25   gravamen of the complaint, not the cause of action pled."  *City of Vista v. Robert Thomas Sec., Inc*., 84

26

27   _____

     [3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

28   [4] Houlihan has also consented to the jurisdiction of the undersigned magistrate judge pursuant to
     28 U.S.C. § 636(c).  (Dkt. No. 93.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cal. App. 4th 882, 889 (2000).   It is thus not dispositive that Plaintiff does not use the terms fraud or

2    misrepresentation in the context of his aiding and abetting claim. *See Thomson v. Canyon,* 198 Cal.

3    App. 4th 594, 607 (2011) ("[w]here the gravamen of the complaint is that defendant's acts constituted

4    actual or constructive fraud, the applicable statute of limitations is the Code of Civil Procedure section

5    338, subdivision (d) three-year limitations period, governing fraud even though the cause of action is

6    designated by the plaintiff as a claim for breach of fiduciary duty.") (internal citation and quotation

7    marks omitted).   Instead, the Court looks to the essence of Plaintiff's complaint.

8          Under California law, the elements of fraud are: "(a) misrepresentation (false representation,

9    concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to

10   induce reliance; (d) justifiable reliance; and (e) resulting damages." *Lazar v. Superior Court*, 12 Cal.

11   4th. 631, 638 (1996).   In contrast, "[t]he elements of a cause of action for breach of fiduciary duty are:

12   (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damages proximately caused

13   by the breach." *Tribeca Companies, LLC v. First American Title Insurance Company*, 239 Cal. App.

14   4th 1088, 1114 (2015).

15         Here, Plaintiff alleges Houlihan and Bollier "together [] commenced a process of manipulating

16   numbers and assumptions inside the valuation" (SAC at ¶ 23); "engaged in a number of accounting

17   machinations" (*Id*. at ¶ 24); and "working in concert, employed a number of valuation gymnastics"

18   (*Id*.).   These allegations regarding Houlihan's misrepresentations of Stacy and Witbeck's actual value

19   through accounting "gymnastics" and "manipulati[ons]" sound in fraud.   *Compare City of Vista*, 84

20   Cal.App.4th at 889 (concluding that the three-year fraud statute of limitations for fraud applied to a

21   claim that a securities broker misrepresented the risk-level of a security) *with Thomson v. Canyon*,

22   198 Cal. App. 4th at 607 (concluding that "Plaintiff's claim is not founded upon the concealment of

23   facts but upon defendants' alleged failure to draft documents necessary to the real estate transaction in

24   which they represented plaintiff.").   Accordingly, the three year statute of limitations for fraud applies.

25         **2) Accrual of Plaintiff's Fraud and Aiding and Abetting Claims**

26         A cause of action accrues at "the time when, under the substantive law, the wrongful act is

27   done, or the wrongful result occurs, and the consequent liability arises," *Norgart v. Upjohn Co*., 21

28   Cal. 4th 383, 397 (1999) (internal citation and quotation marks omitted).   In other words, the statute of

United States District Court
Northern District of California

1   limitations begins to run "when the cause of action is complete with all of its elements." *Norgart*, 21

2   Cal. 4th at 397 (citation omitted).  The aiding and abetting a breach of fiduciary duty claim is

3   predicated on the FY 2012 valuation of Stacy and Witbeck's shares which was set on March 8, 2013

4   (Plaintiff had already sold his shares three months earlier).  This then is the date upon which the claim

5   accrued.  Plaintiff's suggestion that the accrual date should instead be the date he actually paid for his

6   shares (sometime in June of 2013) is unavailing; given that Plaintiff had already sold his shares, he

7   was damaged when the share price was set at an allegedly artificially low level.

8           Although Plaintiff timely pled his breach of fiduciary duty claim against Stacy & Witbeck and

9   John Bollier, he did not seek to add Houlihan as a party until April 22, 2016—more than three years

10  after the breach of fiduciary duty claim, and thus the aiding and abetting the breach claim accrued.

11  Plaintiff argues that his delay in filing is nonetheless excused under the discovery rule.

12          **3) The Discovery Rule Does Not Save Plaintiff's Aiding and Abetting Claim**

13          Under California's discovery rule, a fraud claim is "not deemed to have accrued until the

14  discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code. Civ. P. §

15  338(d).  "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as

16  opposed to a legal theory, for its elements, even if he lacks knowledge thereof — when, simply put, he

17  at least suspects [] that someone has done something wrong to him, wrong being used, not in any

18  technical sense, but rather in accordance with its lay understanding." *Norgart*, 21 Cal. 4th at 397–98

19  (internal citation and quotation marks omitted).  "[S]uspicion of one or more of the elements of a cause

20  of action, coupled with knowledge of any remaining elements, will generally trigger the statute of

21  limitations period." *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 807 (2005).  The discovery

22  rule "allows accrual of the cause of action even if the plaintiff does not have reason to suspect the

23  defendant's identity" because "the identity of the defendant is not an element of a cause of action." *Id*.

24  Thus, "[t]he discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of

25  the cause of action." *Id*.

26          Because the discovery rule operates as an exception to the statute of limitations, "if an action is

27  brought more than three years after commission of the fraud, plaintiff has the burden of pleading and

28  proving that he did not make the discovery until within three years prior to the filing of his complaint."

1    *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 437 (1945). "To excuse failure to discover the fraud

2    within three years after its commission, a plaintiff also must plead facts showing that he was not

3    negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge

4    of facts sufficient to put him on inquiry." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472

5    (2014) (internal quotation marks omitted).  To that end, a plaintiff must allege facts showing "the time

6    and surrounding circumstances of the discovery and what the discovery was." *Id*. "The discovery

7    related facts should be pleaded in detail to allow the court to determine whether the fraud should have

8    been discovered sooner." *Id*.

9    Plaintiff affirmatively alleges that he suspected wrongdoing—that is, the manipulation of the

10    stock price—in March 2012, and that as a result of that suspicion he announced in March 2012 that he

11    would retire in June 2013.  (Dkt. No. 84 at ¶ 21.)  The discovery rule therefore does not save his

12    claim: he discovered, or at least suspected, wrongdoing before his cause of action even accrued in

13    March 2013.

14    Plaintiff contends in his opposition brief (although not pled in the SAC) that it was not until

15    early 2016 that he had access to documents—produced during discovery—that detailed Houlihan's

16    active role in Bollier's share price manipulation.  (Dkt. No. 106 at 7.)  Plaintiff argues that he

17    attempted to obtain discovery regarding the FY 2012 valuation, and in particular, Houlihan's

18    involvement in the valuation process since the commencement of this action, but that Houlihan and

19    Stacy & Witbeck resisted his efforts to do so.  Plaintiff also emphasizes the parties' stay of discovery

20    while attempting mediation.   These facts, however, do not toll the discovery rule.  Plaintiff had three

21    years from accrual of the claim to investigate his suspicions regarding the stock price manipulations.

22    That Plaintiff did not know Houlihan was allegedly aiding and abetting the stock manipulation until

23    March of 2016 is immaterial as the discovery rule "allows accrual of the cause of action even if the

24    plaintiff does not have reason to suspect the defendant's identity." *Fox, Inc.*, 35 Cal. 4th at 807.

25    "[T]he rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury

26    itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the

27    injury, the applicable limitations period . . . normally affords sufficient opportunity to discover the

28    identity of all the wrongdoers." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994); *see*

United States District Court
Northern District of California

7

1    *also Pedro v. City of Los Angeles*, 229 Cal. App. 4th 87, 102-03 (2014) (holding that that

2    "ignorance of the identity of the accused officer" did not toll the one-year statute of limitations for

3    a Government Code Section 3304 claim; the statute began to run upon the discovery of an

4    allegation of misconduct and "the statute does not state or suggest that the defendant's identity

5    must be known or suspected for the limitations period to commence.").

6            At oral argument, Plaintiff advanced an alternative argument—that he did not discover the

7    stock manipulation until the FY 2013 share price was set in March of 2014 because the 22% uptick in

8    share price confirmed that the FY 2012 valuation was an outlier. This argument, however, is

9    contradicted by his express allegation that in March of 2012 he announced his plan to retire "due to the

10   stock price manipulation and the impact it might have on his shares." (Dkt. No. 84 at ¶ 21.)  If in

11   March 2012 he was so concerned about stock manipulation that he announced he would retire in June

12   2013, he had "a suspicion of wrongdoing, and therefore an incentive to sue" as soon as his claim

13   accrued in March 2013.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988).  "So long as a

14   suspicion exists, it is clear that the plaintiff must go find the facts; []he cannot wait for the facts to find

15   h[im]."  *Id.*; *Fox*, 35 Cal. 4th at 808 ("[i]n order to employ the discovery rule to delay accrual of a

16   cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused  must

17   conduct a reasonable investigation of all potential causes of that injury.").

18           **4)    Leave to Amend to Allege Fraudulent Concealment**

19           At oral argument, Plaintiff suggested that the equitable estoppel doctrine of fraudulent

20   concealment should apply here based on the difficulty Plaintiff had obtaining discovery from

21   Houlihan.   "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud

22   was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not

23   at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put

24   him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 321(1974) (citation omitted).  "A

25   plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that

26   he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive

27   knowledge of facts sufficient to put him on inquiry." *Bedolla v. Logan & Frazer*, 52 Cal.App.3d 118,

28   129 (1975).   This equitable principle extends to estop a "defendant who intentionally conceals his or

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    her identity...from asserting the statute of limitations to defeat an untimely claim." *Bernson*, 7 Cal. 4th

2    at 934.  However, "[w]here the identity of at least one defendant is known[] the plaintiff must avail

3    himself of the opportunity to file a timely complaint naming Doe defendants and take discovery." *Id.*

4    at  937.

5    Here, Plaintiff served Houlihan with a subpoena in March 2015—a year before the statute of

6    limitations ran—but did not move the Court to compel compliance with the subpoena until a year later.

7    (*Compare* Dkt. No. 54-1 at 8 *with* Dkt. No. 54.)  The record is not clear as to what was going on

8    during this one year period, although the parties have acknowledged that discovery was stayed during

9    part of this time while the parties attempted to mediate.  In October 2015, Plaintiff sought to compel

10   Defendants to produce valuation documents including documents provided to Houlihan.  In doing so,

11   Plaintiff characterized Houlihan as Stacy and Witbeck's "purportedly independent valuation firm" and

12   argued that the initial stock price for 2012 was established by Bollier "[i]n a very tightly controlled

13   process with Houlihan Lokey"—parroting language which was to appear in the Second Amended

14   Complaint.  (*Compare* Dkt. No. 45 at 1 *with* SAC at ¶ 20.)  The Court granted Plaintiff's request to

15   compel Defendants to produce documents regarding the valuation process including those shared with

16   Houlihan.  (Dkt. No. 48.)  Then, nearly five months later, Plaintiff returned to Court seeking to

17   compel Houlihan's compliance with the previously-issued subpoena.

18   Under the fraudulent concealment doctrine "the statute will toll only until such time that the

19   plaintiff knows, or through the exercise of reasonable diligence should have discovered, the

20   defendant's identity" but "a plaintiff may not disregard reasonably available avenues of inquiry which,

21   if *vigorously* pursued, might yield the desired information." *Bernson*, 7 Cal. 4th at 936 (emphasis

22   added).  Plaintiff shall be granted leave to amend his complaint to allege that the statute of limitations

23   was tolled due to fraudulent concealment to the extent that Plaintiff has a good faith basis for doing so.

24   **B.       Plaintiff has not Adequately Pled an Aiding and Abetting Claim**

25   Under California law, [l]iability may ... be imposed on one who aids and abets the commission

26   of an intentional tort if the person ... (1) knows the other's conduct constitutes a breach of duty and (2)

27   gives substantial assistance or encouragement to the other to so act." *Casey v. U.S. Bank Nat'l Ass'n*,

28   127 Cal. App. 4th 1138, 1144 (2005) (internal citation and quotation marks omitted).  With respect to

9

1    the first factor, only actual knowledge suffices.  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993

2    (9th Cir. 2006) ("the defendant must have actual knowledge of the specific primary wrong the

3    defendant substantially assisted.").   Indeed, while "ordinary business transactions ... can satisfy the

4    substantial assistance element of an aiding and abetting claim" this is true only where the defendant

5    "actually knew those transactions were assisting the [fiduciary] in committing a specific tort [breach of

6    fiduciary duty].  Knowledge is the crucial element." *Casey*, 127 Cal.App. 4th at 1145.  Pleading that a

7    defendant had "vague suspicion of wrong doing" or knew of "wrongful or illegal conduct" is

8    inadequate.  *In re First Alliance Mortg. Co.*, 471 F.3d at 993 n.4 (internal citation and quotation marks

9    omitted); *see Casey*, 127 Cal.App.4th at 1151–52.

10           The starting point for the Court's analysis is to "identify precisely the breach of fiduciary duty

11   for which [plaintiff] seeks to hold [defendant] liable." *Casey*, 127 Cal. App. 4th at 1146 (quoting *In re*

12   *Sharp Intern. Corp*. 281 B.R. 506, 513-14 (Bankr. E.D.N.Y. 2002)).  Here, Plaintiff seeks to hold

13   Houlihan liable for Bollier's breach of fiduciary duty to non-ESOP shareholders under the Buy-Sell

14   Agreement through stock price manipulation.  Thus, Plaintiff must allege that Houlihan had actual

15   knowledge that Bollier was using Houlihan's valuation to manipulate the stock price under the Buy-

16   Sell Agreement.  The closest Plaintiff comes is his allegation that "Houlihan Lokey knew that the

17   valuation was being used for the separate and distinct purpose of valuing the company private shares."

18   (SAC at ¶ 15.)  This allegation, combined with the allegations that Bollier and Houlihan "commenced

19   a process of manipulating numbers and assumptions inside the valuation itself to raise up the stock

20   price without disturbing the fundamental pessimism of the Bollier projections" and that Houlihan

21   "knew that the underlying projections were overly conservative" call into question Houlihan's

22   independence.   (*Id*. at ¶ 24.)  However, the allegations do not support a plausible inference that

23   Houlihan had actual knowledge that Bollier was seeking to manipulate the stock price to ensure that

24   Plaintiff and other shareholders received less money than they deserved under the Buy-Sell

25   Agreement.   "The fact that a company is inflating its receivables does not necessarily mean that the

26   company's principals are looting it. Although it is possible that State Street suspected that the

27   [principals] were engaged in this activity in order to cover up the fact that they were siphoning monies

28   from Sharp, *suspicion and surmise do not constitute actual knowledge*." *Sharp*, 281 B.R. at 515

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (emphasis added).  Plaintiff's argument in his opposition brief that Houlihan cannot have been

2    unaware of Bollier's "dual status" and "potentially competing fiduciary duties to a disparate classes of

3    shareholders (ESOP and non-ESOP)" is not sufficient.  (Dkt. No. 106 at 16 n. 29.)  It is not enough to

4    say that Houlihan should have known that "something fishy" was going on especially where, as here,

5    the allegations are that Houlihan's efforts were aimed at driving the stock price *up*—not down.  *See*

6    *Casey*, 127 Cal. App. 4th at 1149.

7          As the *Casey* court explained, "the banks' alleged knowledge of the [primary alleged

8    tortfeasor's] suspicious account activities—even money laundering—*without more*, does not give rise

9    to tort liability for the banks."  *Id*. at 1151 (emphasis in original).  Merely alleging that the banks "knew

10   that the [tortfeasors] were engaged in wrongful or illegal conduct ... in breach of their fiduciary duties"

11   does not sufficiently plead that the banks had actual knowledge that the tortfeasors were

12   misappropriating plaintiff's funds.  *Id*. at 1152.  However, "it is equally clear that if the [plaintiff] can

13   allege the banks knew the [tortfeasors] were stealing corporate funds and knowingly assisted the

14   [tortfeasors] in laundering this stolen money, those allegations would suffice to state a claim for aiding

15   and abetting the theft (or breach of fiduciary duty)."  *Id*. at 1151.  So too here.  Plaintiff fails to allege

16   that Houlihan had actual knowledge that Bollier's efforts were aimed at breaching his fiduciary duty to

17   ensure that shareholders received less money than they were entitled under the Buy-Sell agreement.

18   "[A]iding and abetting requires participation in a specific primary wrong *with knowledge of the object*

19   *to be attained*."  *Id.* at 1152 (internal citation and quotation marks omitted) (emphasis added).

20         As for the second prong of an aiding and abetting claim—that Houlihan provided substantial

21   assistance to Bollier's alleged misconduct—Plaintiff's allegations are inadequate for the same reasons.

22   While "[o]rdinary business transactions a bank performs for a customer can satisfy the substantial

23   assistance element of an aiding and abetting claim if the bank actually knew those transactions were

24   assisting the customer in committing a specific tort[,] [k]nowledge is the crucial element."  *In re First*

25   *All. Mortgage Co*., 471 F.3d 977, 995 (9th Cir. 2006) (*citing Casey*, 26 Cal.Rptr.3d at 406).  Indeed,

26   "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute

27   aiding and abetting."  *Austin B. v. Escondido Union Sch. Dist*., 149 Cal.App.4th 860, 879 (2007)

28   (internal citation omitted).  Plaintiff also fails to distinguish the conduct at issue here from the conduct

11

1    in *Mendelsohn v. Capital Underwriters, Inc*., 490 F. Supp. 1069 (N.D. Cal. 1979), wherein the court

2    considered an aiding and abetting claim against accountants in a securities fraud action.  The court

3    concluded that plaintiff had failed to allege substantial assistance because the accounting firm "had no

4    authority to influence the affairs of [the primary tortfeasor] and, had [the accountant] quit upon

5    learning of [the primary tortfeasor's] irregular financial practices, [the primary tortfeasor] could simply

6    have hired a less astute accountant or bookkeeper." *Id*. at 1084; *see also Wright v. Schock*, 571 F.

7    Supp. 642, 663 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984) ("The performance of mere

8    ministerial tasks is insufficient to establish aiding and abetting liability").

9         Here, Houlihan is alleged to have followed "Bollier['s] instruct[ions] [] to value the company

10   without taking into account excess cash on hand" in 2009.  (SAC at ¶ 17.)  Similarly, for the fiscal year

11   2011 valuation "in a tightly controlled process [Bollier] instructed Houlihan Lokey to include some,

12   but not all the excess cash, to drive up the valuation slightly." (*Id*. at ¶ 20.)  For fiscal year 2012,

13   Houlihan worked with Bollier "to raise up the stock price."  (*Id*. at ¶ 24.)  Critically, to the extent that

14   these allegations show affirmative acts on the part of Houlihan—as opposed to Houlihan following

15   Bollier's instructions—they all relate to Houlihan's efforts to drive the stock price up.  In this regard,

16   Plaintiff has also failed to adequately allege causation.  Plaintiff's characterization of this as an "it-

17   could-have-been-worse" defense is unavailing.  "[C]ausation is an essential element of an aiding and

18   abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a

19   substantial factor in causing the harm suffered." *See Neilson*, 290 F. Supp. 2d at 1135.  Plaintiff

20   alleges that Houlihan worked with Bollier to drive up the stock price.  Such conduct does not support a

21   plausible inference that that Houlihan's actions were a substantial factor in causing Plaintiff's harm,

22   namely, a reduced stock valuation.

**CONCLUSION**

24        For the reasons stated above, Houlihan's motion to dismiss is GRANTED.  Plaintiff is granted

25   leave to amend his complaint to the extent that he can allege that he was estopped from amending his

26   complaint to state a claim against Houlihan within the statute of limitations period based on

27   Houlihan's fraudulent concealment of its wrongdoing.  If he can do so, he shall also address the

28   Court's concerns regarding the adequacy of his allegations on the aiding and abetting claim.  Plaintiff

United States District Court
Northern District of California

1    shall file his amended complaint within 20 days of the date of this Order.

2         This Order disposes of Docket No. 94.

3         **IT IS SO ORDERED.**

4    Dated: October 26, 2016

5                                                    _____
                                                     JACQUELINE SCOTT CORLEY
6                                                    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13